## MAYOR AND COUNCIL OF MADISON *v.* THOMAS.

1. There was no merit in the ground of the motion for a new trial complaining of the admission in evidence, over stated objections, of the specific articles therein described.
2. Without regard to the respective contentions of the parties as to the proximate cause of the electric-light wire being down across the street which the plaintiff was traversing at the time that he came in contact with it, and was injured by the electric current with which it was charged, the jury could have found from the evidence that the proximate cause of the plaintiff's injuries was negligence on the part of the defendant in turning on such electric current, after receiving actual notice that the wire was down, and without taking any steps to remove the dangerous situation which existed by reason of its being down. Hence, there was no merit in the general grounds of the motion, nor in the ground complaining of the refusal to grant a nonsuit.
3. The question whether the plaintiff, who was only about seven and a half years old when he received the injuries of which he complained, could, by the exercise of due care, have avoided the consequences to himself of the defendant's negligence, was one for determination by the jury, and under the evidence they were authorized to find that he could not.
4. There was no error in refusing the written requests to charge the jury, as set forth in the motion for a new trial.

Argued June 27, 1907.—Decided February 22, 1908.

Action for damages. Before Judge Lewis. Morgan superior court. December 29, 1906.

J. V. Thomas Jr., a minor, brought an action, through his next friend, against the City of Madison, to recover damages for personal injuries. On the trial the evidence authorized the jury to find the following facts: The defendant operated an electric-light plant for lighting its streets and furnishing lights to its residents.

Electric currents were transmitted through wires suspended on poles along the streets. A glass insulating cuff, on a cross-arm of one of the poles, to which a wire was attached, was not screwed on a peg as it should have been, but was merely set loosely thereon, so that it was easily jarred from the peg. The cross-arm was slanting, so that less force was required to jerk the cuff to which the wire was attached from the peg than if the arm had been horizontal. The pole to which this cross-arm was attached was a corner pole, and the wire was more likely to be jerked therefrom by vibration, on account of an abrupt turn made to another pole, than it would be from a pole where no such angle was made. On the day the plaintiff was injured one Brooks Thompson and workmen under him were tearing down a house near this corner pole, and inadvertently permitted a scantling to topple over to the street and to strike the wire, which was insecurely attached to the peg, on the corner pole as above noted, causing it to vibrate and fall from the pole to the street, with the cuff still attached to it. Brooks Thompson saw the wire fall into the street about a quarter to four o'clock in the afternoon, but gave it no attention until he saw some small negro children playing with it, when he made them leave, and then twisted the fallen wire around a scantling in a lumber pile on one side of the street and around the stub of a limb of a peach-tree on the other side of the street, which lifted it about ten feet above the level of the street. He did not then give the city any notice that the wire was down, but when he quit work, a little before dark, he sent one of his workmen to L. M. Thompson's store to request him to telephone to the electric-light plant that the wire was down, and L. M. Thompson, upon receiving this request, went at once to his house and telephoned the information to the city electrician at the plant. Between sundown and dark the plaintiff, then about seven and a half years of age, accompanied by Cyrus Little, a year younger, while walking along the street came to the fallen wire, which was then about two feet from the ground. Cyrus raised it up with his hands and went under it without injury. Plaintiff caught the wire with his hands to do likewise, but was severely shocked and burned. Where plaintiff grasped the wire with one of his hands the insulating covering was off for an inch or more, and the appearance indicated that it had been off for a considerable time.

A nonsuit was refused, and a verdict for the plaintiff was rendered. The defendant's motion for a new trial was overruled; and it excepted to both rulings.

*Williford & Middlebrooks* and *Foster & Foster,* for plaintiff in error. *Samuel H. Sibley* and *George & Anderson,* contra.

FISH, C. J. (After stating the facts.)

1. One ground of the motion for a new trial is as follows: "Because the court erred in admitting in evidence, over movant's objection, a cross-arm to an electric-light pole, one peg that is attached to such cross-arms, and a glass cuff which fits over such pegs; the objection to such evidence being that cross-arm and cuff tendered were not the cross-arm or cuff that were on or attached to the pole from which the wire fell, and the peg objected to was not the peg on which was the cuff to which the fallen wire was attached." In a note to this ground the trial judge states: "The cross-arm was testified to be like the one on the pole in question. The cuff was identified as . . being like the ones on the pole. One of the pegs was identified as that from which the wire fell, and the other peg objected to as that at the other end of the cross-arm." We apprehend that the purpose of introducing these articles in evidence was to show, as alleged in the petition, the method adopted by the city for stringing the wires upon the poles. For this purpose, any cross-arm, any cuff, and any peg, which was shown by the testimony to be like the cross-arm, cuff, or peg which was on the particular pole in question, when the wire which carried the current which caused the plaintiff's injuries fell therefrom, was admissible in evidence. Had the object of the plaintiff been to show a defective condition in the cross-arm, cuff, or peg from which the wire was claimed to have fallen, the case would be different, and another article of a similar character, in which there existed individual defects, would not be admissible in evidence, if properly objected to. But it was not contended by plaintiff that his injuries were caused by any defect in the cross-arm itself, the cuff, or the peg, from which the wire fell. It is claimed, however, by counsel for plaintiff in error that the evidence showed that the particular peg objected to was a rotten peg and was not the one upon which the wire was supported. If this peg was rotten or decayed, the ground for a new trial under consideration fails to disclose it, and can not be aided by reference to

the brief of evidence contained in the record. It does not appear that the introduction of the peg in evidence was objected to for this reason, the only objection being that it was not the peg from which the wire fell. Besides, it appears from the note of the judge that two pegs were introduced in evidence, one of which was the peg from which the wire had fallen; and as there was no question as to the sound condition of this peg, and no contention that the condition of a peg to which the wire was not attached had anything whatever to do with the fall of the wire, it seems hardly possible that the condition of the peg objected to, whatever it may have been, could have influenced the jury in rendering their verdict.

2. In a number of instances in the motion for a new trial, the verdict is excepted to upon the ground that it was contrary to certain quoted instructions of the court. These grounds are but amplifications of the general grounds, and merely serve to point out wherein the movant contends that the verdict was contrary to the law, as applied to the evidence in the case. The plaintiff in error contends, that even admitting that the evidence showed that the city was negligent, prior to the fall of the wire, in the particulars claimed by the defendant in error, this negligence was not the cause of his injuries; that the wire was "caused to fall by human agency independent of and in no way connected with the city," and that the knocking of the wire from the pole by the falling scantling which struck it was "one intervening preponderating cause for the injury, and without which it could not have happened," and hence the city was not liable; that even this was not the proximate cause of the injury, but "still another intervening cause, produced by some other agency, unknown, was the direct and proximate cause;" that "the proximate cause of this injury was the taking down by some agency of the wire after Brooks Thompson had tied it up." On the other hand, the defendant in error contends, that, even if the scantling knocked the wire down and Brooks Thompson tied it up, it would not have fallen from the blow of the scantling if it had been properly secured in its place above the street, and that the proximate cause of the fall of the wire and of the plaintiff's injuries was negligence of the city which existed when the scantling struck the wire, as the city ought to have reasonably apprehended that some force was likely to cause the wire to vibrate or oscillate as it did when struck by the falling scant-

ling, and thereby be shaken from its insecure position upon the pole. But, in reaching the conclusion that there was sufficient evidence to support the verdict in favor of the plaintiff, we have not found it necessary to determine the merits of these respective contentions. After a most careful study of the evidence, we are fully satisfied that the jury were authorized to find therefrom that the city negligently turned the dangerous current of electricity through the wire after it had received actual notice that the wire was down in the street. The evidence did not demand such a finding, but it fully authorized it. There can be no question that if the agent of the city, in charge of its electric-light plant, received notice that the wire was down before he turned on the electric current which caused the injuries to the plaintiff, and then turned on such current, without having the wire removed from its dangerous position in the street, or taking other precautionary measures to prevent injury to persons passing through the street, the city would be liable to any one who, without fault on his part, was injured by such electric current in consequence of having come in contact with such fallen wire. If the superintendent of the electric-light plant received notice that the wire was down, and the electric current was then on, he should have instantly turned the current off and kept it off until, after due investigation, the report was found to be untrue, or, if found to be true, until proper precautions were taken to prevent danger to persons or property from the fallen wire. If at the time of receiving such report the current was not on, then he should have seen that it was not turned on until he had ascertained that the wire was not down, or, if down, the danger from its having been down in the street had been obviated. The defendant contended that, when the current was turned on, it had received no notice that the wire had fallen down. The plaintiff contended that the evidence showed that at such time the city had received this notice through a telephone message from L. M. Thompson, the father of Brooks Thompson, to the superintendent of the electric lighting plant. The determination of this issue was with the jury; and as there was sufficient evidence upon which to decide it in the plaintiff's favor, the verdict which they rendered was not contrary to the law, as applied to the evidence, whether other disputed questions were decided one way or the other.

As the evidence in the case authorized a verdict in favor of the

plaintiff, there was no merit in the ground of the motion for new trial assigning error upon the refusal of the court to grant a non-suit.

3.   It is contended by counsel for the plaintiff in error, that even if the city were negligent as charged in the petition, still the plaintiff, by the exercise of due care, that is, "such care as his capacity, mental and physical, [fitted] him for exercising in the actual circumstances of the occasion and situation under investigation," could have avoided being injured by such negligence, and therefore that the verdict was contrary to the principle of law embraced in this contention, which was given in charge to the jury by the court. In support of this contention counsel says: "The evidence of the child himself shows that he possessed all the requisites, mentally and physically, of an adult for the exercising of due care and diligence in this particular transaction. His evidence shows that he was unusually bright and intelligent and fully understood the danger of an electric-light wire when charged." This contention is based on the testimony of the plaintiff, that, about twenty minutes before he found the wire down across the street, he heard the whistle blow at the electric-light plant, and knew that this meant that the lights were coming on; that he knew that electric-light wires crossed that street, and that it was dangerous to come in contact with them when the current was on. But he further testified: "I just didn't know it was an electric wire. If I had known it was an electric wire, I wouldn't have taken hold of it. I didn't think about the electric wires along that alley. I knew the electric wires were along there, but I didn't look up to see the wires. I just didn't happen to think." We think that the testimony of the plaintiff, as shown by the record, does indicate that "he was unusually bright and intelligent" for a child of his age; but when he delivered it he was something over two and a half years older than he was at the time of the occurrence under investigation, and this fact the jury could take into consideration in judging of his capacity, mental and physical, at the time he was injured, for exercising care for his own safety "in the actual circumstances of the occasion and situation under investigation." It was for the jury to determine whether this child, who was only about seven and a half years of age at the time he received the injuries complained of, exercised due care,

as above defined, on the occasion and under the circumstances in question; and we are clearly of opinion that, under the evidence, they were authorized to find, that there was no want of due care on his part when he took hold of the fallen wire, for the purpose of passing under it, and was injured by the electric current with which it was charged.

4. Error was assigned in the motion for a new trial, because the court refused, when requested in writing so to do, to instruct the jury as follows: "If the injury to the child was caused mainly by the falling of timbers, from a house being pulled down, across the wire; if you believe this was the main, substantial, preponderating cause of the injury, then plaintiff can not recover, even though the city was negligent as charged in the petition, and even though such negligence of the city added to or increased the injury in some minor or uncertain way." The court did instruct the jury that if they believed "the wire was detached from the pole, not because of its not being made reasonably secure to the pole, but because of another and independent agency that operated as the main and real and proximate cause of the injury, plaintiff could not recover." The court also charged: "You may believe from the evidence that the plaintiff was injured, and the city was negligent as charged in the petition; still this is not sufficient for you to find a verdict against the city. Before you can find a verdict against the city you must believe that the city was not only negligent, but this negligence caused the injury; not that it contributed to the injury, mainly arising from other causes. The city's negligence must be the chief cause, the preponderating cause, the controlling cause of the injury, before a recovery can be had in the case." The jury was also instructed: "If there exist any other intervening cause or causes shown by the evidence, independent of the acts of negligence or omissions of duty complained of by the plaintiff that produced the injury, that was the real cause of the injury, that preponderated in producing the injury, then the plaintiff can not recover." In view of these instructions, there is certainly no merit in the complaint that the court did not give the instruction requested, which, as we have seen, was fully covered by the charge.

Other assignments of error were, that the court refused, when properly requested, to give the following instructions: "So, too,

if you believe from the evidence that the wire was thrown from the pole, and after it had been so thrown it was tied up and put in a place where persons could safely pass under it, and that it was afterwards pulled down by some one, not an employee of the city, and that such pulling down was the main, substantial, preponderating cause of the injury, then plaintiff can not recover, even though the city was negligent as charged in the petition, and even though such negligence of the city added to or increased the injury in some minor and uncertain way." "So, if you believe from the evidence that a falling timber knocked the wire down, or that the wire after being knocked down was safely tied up, afterwards pulled down by some one not an employee of the city, and that either of these things was the main, substantial, preponderating cause of the injury, then the plaintiff can not recover, notwithstanding the city may have been negligent and notwithstanding that such negligence added to or increased the injury, provided the city did not have knowledge. Before the plaintiff can recover, the negligence complained of must be the main, controlling, and preponderating cause, and such negligence must be ascertained and distinguished from all other causes." Each of these requests was properly refused by the court. In the first place, there was no evidence whatever that somebody, not an employee of the city, pulled the wire down after "it was tied up." Nor was there any evidence that it was pulled down at all, unless it be the mere opinion of Brooks Thompson that it could not have gotten down in any other way. In the next place, neither of the requests made any distinction between the pulling down of the wire by a person responsible in law for his acts of negligence, and its being pulled down by an irresponsible child or children, who, according to the evidence, would have had easy access to it after it was placed where Brooks Thompson testified he put it. According to his testimony, a child could have reached it from a fence which was on an embankment, several feet above the level of the street; and it seems apparent that children might easily have reached the wire by climbing upon the pile of lumber, which supported it on one side of the street, or into the peach-tree which held it up on the other side. That this wire was an attractive object, or plaything, for children, when within their reach, was shown by the fact that Thompson saw children playing with it,

and it was this circumstance which led·him to place it in the tree and on the lumber pile. Certainly if the city, with notice that the wire was down in the street, had done no more than Thompson testified he did, toward preventing persons passing through the street from coming in contact with it, it could hardly be held that the city was not responsible for the wire being down across the street when the plaintiff was injured.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*