### 4554. ATLANTA TELEPHONE AND TELEGRAPH CO. v, CHESHIRE.

1. The allegations of the petition set forth a cause of action due to the negligent conduct therein described, and the general demurrer thereto was properly overruled.
2. The special demurrers to the petition are without substantial merit.
3. Where the defendant claimed that the plaintiff was a trespasser, and the plaintiff claimed that she was a licensee, and the law applicable to both theories was fully and accurately presented in the charge to the jury, the defendant has no ground of complaint if in fact there was evidence as to both contentions; and the verdict as to the issue was conclusive.

4. Whether the defendant had notice, actual or constructive, of the dangerous condition of its wire, as described and proved, was for determination by the jury; and there being evidence to support the contention that there was at least constructive notice, the finding as to this issue must be accepted as final.

5. The allegations descriptive of the defendant's negligence which caused the injuries to the plaintiff were substantially proved as laid, and there was no material variance between the allegata and the probata.

DECIDED MAY 6, 1913.

Action for damages; from city court of Atlanta—Judge Reid. November 2, 1912.

Mrs. Laura Cheshire sued the Atlanta Telephone and Telegraph Company for damages on account of personal injuries alleged to have been sustained by reason of the defendant's negligence. The allegations of the petition in substance are as follows: On February 27, 1911, the defendant company was maintaining a line of telephone poles and wires along the public road leading from Atlanta to College Park, and particularly at that point in said road known as "Lakewood crossing." Directly opposite this crossing, and in front of a grocery store carried on by the plaintiff's husband, was a telephone pole of the defendant, which had been there for three years. For several years and until about two months prior to February 27, 1911, a cable box and a ground wire were on this pole. The ground wire was for the purpose of protecting the cable and the cable box from lightning. The ground wire was an ordinary cable, running from the top of the pole down along the side of the pole, and having its lower end buried in the ground at the foot of the pole. On or about January 1, 1911, this cable and the cable box were removed from this pole by the telephone company, the company being engaged at that time in putting the poles and wires and cables along the side of the public road. When the cable and cable box were thus removed from the pole, the ground wire was left swinging therefrom in close proximity to the feed wires of the Georgia Railway and Electric Company. These feed wires were maintained by that company upon its line of poles parallel and near to the line of poles of the defendant company, and were powerfully charged with electric current. On February 27, 1911, the ground wire of the defendant company had come in contact with the feed wires of the railway and electric company, and thereby it became heavily charged with electric current from said wires. The lower end of the ground wire, swinging from the pole, as above de-

scribed, had come in contact with plaintiff's mail box, a galvanized iron R. F. D. box, and this box had become charged with the electric current from said feed wires. On said day the plaintiff went to get her mail from the box, and, when she laid her hand upon the box for the purpose of opening it, she received a powerful current of electricity through her hand, arm, and body, and sustained various injuries described in the petition.

The particular negligence charged against the defendant was as follows: When the defendant's cable and cable box were removed from its pole as above described, the ground wire was left to swing idly and uselessly from the pole, in close proximity to and likely to come in contact with the high-power feed wires of the railway and electric company, and said ground wire was allowed to remain in contact with said feed wires and with plaintiff's mail box. Defendant was negligent in failing to secure said ground wire on its pole so as to prevent its coming in contact with the live wires maintained parallel and near to the defendant's line of poles. Defendant was negligent in maintaining the ground wire in such a position that it could and did come in contact with the feed wires of the railway and electric company, thereby becoming charged with electricity. Defendant was negligent in maintaining the ground wire in such a position that it could and did come in contact with the feed wires and also with plaintiff's mail box at the same time. Plaintiff did not know of the existence of defendant's ground wire, nor of its contact with the feed wires, nor of its electrified condition, nor of its contact with her mail box, and she had no means of knowing these facts, while the defendant knew, or, by the exercise of ordinary diligence, could have known them. A demurrer on general and special grounds was overruled, and exceptions pendente lite were preserved.

The evidence in support of the allegations of the petition was, in substance, as follows: In the fall and winter of 1910 and 1911, the East Point road, on which the poles of the defendant company were placed, was being widened by the County of Fulton. At the western edge of the old road,—that is, the old road before it was widened,—the defendant company and the Georgia Railway and Electric Company had their wires strung along on poles, each separate and apart from the other line, the telephone wires of the defendant company being from three to five feet directly above the

feed wires of the Georgia Railway and Electric Company. When the widening of the East Point road had reached "Lakewood cross-ing," commonly known as "Knott's crossing," the road was widened on the western side about twenty feet, and therefore it was neces-sary for the defendant company and the railway and electric com-pany to move their respective lines of wires and poles to one side or the other of the new road so widened. At this crossing the husband of the plaintiff ran a little grocery store, on the western side of the road. Directly in front of this store and up against its porch was one of the defendant's telephone poles. On this pole the plaintiff's son had nailed a galvanized iron R. F. D. mail box, and when the road was widened at this point the grocery store was moved back west, leaving the pole in the road. The mail box had been nailed there for about two or two and a half years. On Feb-ruary 27, 1911, the date when the plaintiff received her injury, the greater part of the old lines had been removed by the companies to the side of the new road. There was a section, however, from Knott's crossing, running north for seven hundred feet, which had not been moved. So far as defendant's lines and poles were con-cerned, this section was absolutely dead, because all its wires were cut and wrapped around the last pole. Directly underneath this section of defendant's wires ran the highly charged feed wires of the Georgia Railway and Electric Company. At the northern end of this section of the defendant's dead wires was a guy wire run-ning from the last pole on which the defendant's wires were strung, to the bottom of the last pole of the defendant's wires at the north-ern end. This guy wire counterbalanced the stringing of the tel-ephone wires to the south, and prevented these wires from sagging down on the feed wires below. On the telephone pole directly in front of the grocery store of plaintiff's husband, on which the mail box was nailed, there was an ordinary copper wire, nailed up and down this pole and known as the ground wire. This wire was torn loose at the bottom and from a point directly above the mail box at the top of the pole this ground wire was stapled to the pole. The purpose of this ground wire was to protect the pole from light-ning. There never was a cable box on this pole, and this ground wire never had any connection with the cable which had been removed. About February 24, 1911, the northernmost pole in the dead section of the defendant's poles and wires was acci-

dentally run into and broken off by the county steam roller, and to this broken pole was attached the guy wire above described. The evidence does not show that the defendant company had any notice of this broken pole. On Saturday, February 25, at noon, the plaintiff received some mail out of her mail box attached to the defendant's pole, without any electric shock. The next day was Sunday and no mail was delivered. On Monday afternoon, February 27, between three and four o'clock, the plaintiff received a violent shock when she went to open the metal mail box for the purpose of getting her mail. On the same afternoon the defendant sent a squad of men to the scene of the accident, to prevent further possible danger to any one else. Upon examination it was discovered, that, at a point several poles north of the scene of the accident, the defendant company's telephone wires had sagged and had come in contact with the feed wires of the railway and electric company below, and this sagging was the result of the breaking of the pole above described, and in some unexplained way the current was conveyed from the feed wires to the ground wire and thence to the plaintiff's mail box. On these facts a verdict was returned in favor of the plaintiff, for $2,750. The defendant moved for a new trial on various grounds, and to the judgment overruling this motion it excepted.

*Smith, Hammond & Smith,* for plaintiff in error.
*Colquitt & Conyers, George Gordon,* contra.

HILL, C. J. (After stating the foregoing facts.)

1. The general demurrer was properly overruled. It was based on the theory that the only reasonable inference from the allegations of the petition is that the mail box of the plaintiff's husband was nailed to the defendant company's pole, that this placing of the box on the pole was done without the defendant's knowledge and consent either express or implied, that therefore the placing of the box on the pole was an act of trespass, that for this reason the defendant company owed only the duty of not wantonly and wilfully injuring the plaintiff, and, as the petition did not allege that this duty was violated, or allege any fact from which wilful and wanton conduct by the defendant company in injuring the plaintiff could be fairly inferred, that no cause of action was set forth. It does not clearly appear from the petition that the mail box was actually on the defendant's pole. It might have been on a pole

provided by the plaintiff near the pole of the defendant, near enough to have been within reach of the wire of the defendant company, which was powerfully charged with the electric current from the wires of the Georgia Railway & Electric Company. If more specific information had been desired, or was necessary, as to the exact location of the mail box, it should have been called for by special demurrer. The allegations of the petition were sufficient to withstand a general demurrer.

2. The grounds of special demurrer to paragraphs of the petition, based upon the theory that these paragraphs are merely conclusions of the pleader, without any allegation of fact to support them, or that the allegations fail to show that defendant knew or by the exercise of ordinary diligence should have known of the position of the mail box on the pole, or that the plaintiff, by the exercise of ordinary diligence, could have discovered the dangerous condition of the wires in proximity to the mail box, were without substantial merit and were all properly overruled.

3. It is contended that the evidence proved that the mail box was on the defendant's pole without its knowledge or consent, and that in placing the box on the pole without authority the plaintiff was simply a trespasser, and took the risk incident to the trespass. There was evidence that the mail box had been on this pole for over two years, and that it had been seen on the pole by various employees and officials of the defendant company. It did not appear that any objection was ever made to its location. The trial judge in his instructions gave the defendant the full benefit of the contention that the plaintiff was a trespasser, charging the law pertinent to that theory. He also properly submitted the contention of the plaintiff that she was a licensee, and charged the law applicable to that theory. The jury found in favor of the latter theory, and certainly there was evidence to support that conclusion.

4. Again, it is earnestly insisted that defendant company had no notice, either actual or constructive, of the fateful and dangerous contact of its wire with those of the electric company. According to the evidence, this dangerous contact had not occurred as late as Saturday afternoon, February 25, 1911, for on that day the plaintiff had taken her mail from the box without injury. On Sunday there was no inspection of the situation. The plaintiff was hurt on Monday afternoon, and then for the first time the defendant

received notice of the dangerous situation, and at once remedied it. This argument is on the assumption that the dangerous contact was caused by the negligent conduct of the county employees in knocking down the defendant's guy post with its steam road-roller. The evidence is not entirely clear as to the exact point of dangerous contact between the wire of the defendant company and the wires of the railway and electric company, whereby it became heavily charged with electricity. It was not controverted that the wire of the defendant company which was in close proximity to the plaintiff's mail box had in fact come in physical contact with the heavily charged wires of the electric company, and had thereby become dangerously charged with electricity, and that this highly charged wire had, by the negligence of the defendant, been allowed to come in physical contact with the plaintiff's mail box. Assuming that the theory of the defendant as to the point of physical contact between the wires of the two companies, and the consequent dangerous condition of the defendant's wire, was correct, it was for the jury to determine the issue as to notice.

5. The plaintiff in error insists that there was a material and fatal variance between the allegata and probata as to the point of contact between the "ground wire of the defendant and the 'feed wires' of the railway company." The allegation was that "said ground wire was left to swing idly and uselessly from said pole in close proximity to and likely to come in contact with the high-power feed wires of the Georgia Railway & Electric Company." The proof shows that the feed wires came in contact with the telephone wires some distance from the pole carrying the ground wire and the mail box, said contact being the result of the steam-roller of the county knocking down the defendant's guy post. We do not think this variance material. The *place* of physical contact was not material. The *fact* of physical contact which caused the electrical condition of the telephone wire was the material question. The point of danger was the broken ground wire of the defendant, hanging in close proximity to the plaintiff's mail box. This ground wire was in proximity to the feed wires of the railway and electric company, and did actually become charged from the high-voltage wires of the latter. The mail box would not have been electrified and rendered dangerous to the plaintiff, but for the fact that the heavily charged and broken ground wire had been allowed to re-

main in that condition in proximity to the mail box, where it did come in contact with the mail box. The question in a nutshell is just this: The broken end of the ground wire had been negligently left dangerously near to the mail box, and this wire at some point (it would seem immaterial where) came into physical contact with the high-voltage wires of the railway and electric company, the current extending throughout the length of the wire and to the broken end where it came in contact with the mail box. This question is fully controlled by the decision in *Southern Bell Tel. &c. Co.* v. *Davis,* 12 *Ga. App.* 28 (76 S. E. 786). After a most careful consideration of the able arguments of counsel, in connection with the record, we have come to the conclusion that no substantial error of law was committed, and that the judgment refusing another trial should be                    *Affirmed.*