7815. SAVANNAH LIGHTING COMPANY *v.* HARRISON.

The petition set forth a cause of action, and the court did not err in overruling the demurrer.

DECIDED APRIL 4, 1917. REHEARING DENIED JUNE 15, 1917.

Action for damages; from city court of Savannah—Judge Davis Freeman. August 16, 1916.

*Adams & Adams,* for plaintiff in error.

*Oliver & Oliver,* contra.

LUKE, J.  The plaintiff's petition makes substantially the following case:  The Savannah Lighting Company owns, operates, maintains, and controls, in the City of Savannah, an electric lighting and power system, and, in various places in the city and in the county of Chatham, owns, maintains, and controls electric wires, carrying high voltage of electricity, strung upon poles.  One of such lines is situated west of the city of Savannah, running in an easterly and westerly direction, and parallel with the Augusta road, about three hundred yards to the rear of the home in which the petitioner lives.  Standing almost directly in the rear of his home is a pole belonging to the defendant, which, with a series of other poles, carries electric wires and cables as aforesaid.  The said line of poles carries four current-carrying wires, two on each side of the pole, at the end of the cross-arms, and another wire or cable directly over the top of said line of poles, and from this top wire another wire or cable extended down the pole, and had been attached to it by means of porcelain knobs, and entered a lead pipe, about four feet above the ground.  For a period of several months the said ground wire,—that is, the wire extending from the topmost wire down the side of the pole to the lead pipe,—had been broken off at the top of the lead pipe, and was loose from some of the porcelain knobs.  It had also been broken and detached from the topmost wire, and was extending up the said pole, leaning first to one side and then to the other, in the direction of the two current-carrying wires on each side of the pole.  A slight wind was sufficient to sway the wire at its top end to the wires on either the north or the south side of the pole.  The ground wire had been detached as aforesaid from the lead pipe for a period of several months, and had been blown by the wind and whipped against the pole to such an extent that the insulation had been worn and broken, leaving the copper wire without insulation in several places.  Petitioner is a boy thirteen years of age, entirely ignorant of electricity or its effects, and knowing nothing of the danger connected with such line of wire.  On the afternoon of March 4, 1916, he had been playing with a companion in the field back of his father's house, and, following his boyish impulses, he started southward, and in passing the said pole he caught the broken wire extending toward the ground, and received a severe electric shock, which knocked him unconscious for a considerable period of time.  As a

result of the dangerous dangling wire his hand was severely burned and injured, with the result that the index finger and the thumb on his left hand had to be amputated, and his hand was badly burned. The pole upon which was the defective wire causing the injury stood upon land in a field cultivated by his father, to which he had right of free access. The petition alleges, that his injuries are due entirely to the fault of the defendant company, its servants, and employees, for the following reasons, to wit: "(1) In permitting a dangerous instrumentality to exist near petitioner's home, when, in the exercise of ordinary care, the said company should have known that petitioner, or other passers-by, or persons working in the field, might receive injuries therefrom. (2) In permitting the said ground wire to become broken from the lead pipe, and sway in the wind, and beat against the telegraph pole for such length of time as to break the insulation thereof, to petitioner's injury and damage. (3) In permitting the said ground wire to become detached from the topmost wire on said pole, and to remain in such condition that it could come in contact with other current-carrying wires thereon. (4) In permitting said dangerous condition to exist for a period of several months prior to petitioner's injury. (5) In not exercising the proper degree of care to guard and protect persons passing by said pole, or otherwise rightfully upon said premises, from injury thereby. (6) In failing to maintain such a highly dangerous and deadly instrumentality in a reasonably safe and proper manner." The defendant demurred generally to the petition, the court overruled the demurrer, and the defendant excepted to that judgment.

This case is easily distinguished from the following cases: In *Southern Bell Tel. Co.* v. *Howell,* 124 *Ga.* 1050 (53 S. E. 577, 4 Ann. Cas. 707), a wire charged with electricity was permitted to sag so that a pedestrian came in contact with it while on the street. In *Eining* v. *Ga. Railway & Electric Co.,* 133 *Ga.* 458 (66 S. E. 237), a wire was broken and lying on the street, charged with electricity, and a pedestrian came in contact with it. In *Atlanta Consolidated Street Ry. Co.* v. *Owings,* 97 *Ga.* 663 (25 S. E. 377, 33 S. E. 798), a heavily charged wire fell across another wire, on which the deceased was working and had a right to work. In *Mayor &c. of Madison* v. *Thomas,* 130 *Ga.* 153 (60 S. E. 461), the city had notice that a wire on the street was charged with elec-

tricity, and the injured person was a pedestrian and lifted up the wire to pass under it and was injured. In *Southern Bell Tel. Co. v. Davis,* 12 *Ga. App.* 28 (76 S. E; 786), a wire, heavily charged with electricity, was left across a sidewalk, and the injured person came in contact with it while walking along the street, and, in efforts to extricate himself from the wire, his hand touched it and he was burned. In *Atlanta Telephone &c. Co.* v. *Cheshire,* 12 *Ga. App.* 652 (78 S. E. 53), a heavily charged wire was permitted to touch and charge with electricity a mail-box, and the injury was received when the owner of the box placed her hands on it for the purpose of opening it. In *Southern Bell Tel. Co.* v. *Ellis,* 16 *Ga. App.* 864 (87 S. E. 766), the telephone company left lying in the yard of the injured person a wire charged with electricity, and at night he came in contact with the wire. The present case does fall within the ruling announced in *Wallace* v. *Matthewson,* 143 *Ga.* 236 (84 S. E. 450), and especially within the rulings in *Mills* v. *Central of Ga. Ry. Co.,* 140 *Ga.* 181 (78 S. E. 816, Ann. Cas. 1914C, 1098), and *Sedlmeyr* v. *Fitzgerald,* 140 *Ga.* 614 (79 S. E. 469).

It seems to be settled that children are only required to exercise such care for their own safety as may reasonably be expected in view of their age and condition. Whether such care has been exercised is usually a question for the jury to determine. The jury usually have the opportunity of seeing the minor and hearing him testify, and unless the child is so young that the court may say that he is incapable of contributory negligence, the jury have the right to determine that he is of such age and is possesesd of such intelligence that he may be guilty of contributory negligence or lacking in care to such an extent as to defeat his right to recover. The jury have the right to say for themselves whether the negligence, if any, of the defendant is the proximate cause of the injury to the plaintiff, or whether the voluntary act of the plaintiff is such that no recovery for the injuries should be had. For the purposes of the demurrer, the allegations of the petition must be taken by the court as true. This being the law, this court can not as a matter of law hold that the petition in this case shows that the injury alleged to have been sustained by the plaintiff was not the result of negligence upon the part of the defendant; nor can we, as matter of law, say that the petition shows that the plaintiff,

by his voluntary act in taking hold of the wire, in view of his age, was lacking in that care which the law imposes.

*Judgment affirmed. Wade, C. J., and George, J., concur.*