47676. CENTRAL GEORGIA ELECTRIC MEMBERSHIP CORPORATION v. DRAKE et al.

561

ARGUED JANUARY 4, 1973 — DECIDED FEBRUARY 22,
1973 — REHEARING DENIED MARCH 20, 1973 — 

*Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for
appellant.

*Harris, Russell & Watkins, John B. Harris, Jr., Alfred
D. Fears,* for appellees.

EVANS, Judge. Mrs. Margaret Drake sued Central of
Georgia Electric Membership Corporation and Walter
Lee Shannon for the wrongful homicide of her minor son,
Thomas Kingman Carmichael. She alleged that Shannon
negligently drove his automobile into a utility pole of the
defendant, causing its electric wires to fall onto a busily
traveled highway, and that her son drove his car into the

uninsulated electric wires on the highway in the night-time and was electrocuted. The wires were carrying 7,200 volts of electricity, and even wires carrying 110 volts are lethal. Stated succinctly, plaintiff alleged the electric corporation was negligent in the following acts: a. Allowing uninsulated wires carrying heavy voltage to cross the busily traveled highway; b. Not maintaining circuit-breakers or other safety devices that would cut off the electricity when the line was broken; and c. In not taking steps to remedy the condition after the wire was broken and lying in the highway, for such period of time as to create a dangerous condition for motor vehicles traversing said public highway, Georgia 42.

The wires were uninsulated; they carried 7,200 volts of electricity; they crossed public highway 42; and on the night in question they were lying in highway 42, after Shannon had run his automobile into the electric corporation's utility pole adjacent to the highway. However, the electric corporation stoutly denies that it was negligent.

Construing the evidence most favorably toward the respondent, including all inferences and conclusions, the record in this case shows that R. F. Armstrong, general manager of the electric corporation, resided in Jackson, just ten miles from the scene of the collision; that he was notified by telephone that a wire was down, hanging across the road so as to constitute hazard to the public. When Armstrong learned that the hot-line was down at this place of heavy traffic he testified: "Every time that happens you expect anything to happen!" Still, he did not go the scene, although he was just ten miles away, but to the contrary, he went to the police booth in Jackson, there to await any other information that might be telephoned to him. He telephoned two other employees to go to the scene, but neither went directly; they waited to get together with each other, and it required them 45 minutes to make the trip to the scene. The record does not

show exactly how far either of these two employees lived from the place where the wire was hanging over the road; nor does the record show the exact time when plaintiff's son was electrocuted by the wire, although it was about midnight. But when the two employees reached the scene, 45 minutes or more after they were notified, the electrocution had taken place, and construing the evidence most strongly against movant for summary judgment, the electrocution took place while they were making this 45 minute trip to the scene, as Kinard stated. He arrived after midnight. Armstrong was only ten miles away—he learned of it before the two employees learned of it—and he could have reached the scene in 15 minutes—or in one-third of the time the two employees took in making this journey. But Armstrong continued his lonely vigil in Jackson, and more than an hour later he received a second telephone call and then went to the scene. As to the exact time of these events, one of the employees, Kinard, testified that they kept a written log of these things, and that Armstrong was quite familiar with this fact. Yet the log was never produced or accounted for. It must be presumed that if the electric company, defendant, had produced the log, it would not have helped its case. See Code § 38-119.

In *Southern Bell Tel. &c. Co. v. Davis,* 12 Ga. App. 28, 35 (76 SE 786), this court held: "In other words, in our opinion, to establish a prima facie case of negligence, all the plaintiff would have to show would be a broken wire, charged with electricity, lying on the sidewalk. When these facts are shown, the doctrine of res ipsa loquitur applies, *and the burden is cast upon the defendant to remove the inference of negligence* against it which arises upon proof of these facts." (Emphasis supplied.)

In *Ga. Power Co. v. Puckett,* 50 Ga. App. 720, 724 (179 SE 284), this court holds that it is a jury question as to whether the electric company was negligent in maintaining its wires in an improperly insulated

condition *and in failing to turn the switch and cut off the electric current when some of its wires were down on the ground.*

How quickly must an electric company cut off the current when it learns its lines are down and are endangering the public? This question is answered in *City of Madison v. Thomas,* 130 Ga. 153, 157 (60 SE 461), in this language: "If the superintendent of the electric light plant received notice that the wire was down, and the electric current was then on, *he should have instantly turned the current off,* and kept if off until, after due investigation, the report was found to be untrue, or, if found to be true, until proper precautions were taken to prevent danger to persons or property from the fallen wire." (Emphasis supplied.)

From the foregoing authorities, it is quite clear that the law of Georgia requires an electric company to *instantly* turn off the current when it learns that its lines are down and in such position as to endanger the public. What does the record show in this case? The general manager of the electric company learned of the dangerous situation while only ten miles away, but did not go to the scene and turn off the electric current. He requested two other employees to go while he remained in Jackson for more than an hour before receiving a second telephone call, at which time he went to the scene. But he arrived too late; the damage had been done. The two men who were sent took more than 45 minutes to get to the scene—whereas the manager was only ten miles away and surely could have reached the scene in 15 minutes. Instead of *instantly* turning off the current after learning of its hazardous condition, the electric company allowed 45 minutes to elapse—three times the time in which Armstrong, general manager, could and should have reached the scene and cut off the electric current. Under these circumstances, it is for a jury to determine as to whether proper diligence would have required the electric company to

instantly go to the scene and cut off the electric current after receiving notice that its wires were down.

It is not necessary to pass upon the question of defendant's negligence as to the uninsulated wires and failure to maintain circuit-breakers that would automatically cut off the current when the wire was broken. We do not reach those questions. The evidence submitted is insufficient to require the grant of a summary judgment.

*Judgment affirmed. Clark, J., concurs. Hall, P. J., concurs in the judgment only.*