## 2570. ATLANTIC COAST LINE RAILROAD CO. v. DANIELS.

1. Every effect is the result of a combination of causes, in the broad sense of the word "cause." The legal meaning of the word "cause" is somewhat different. The law has adopted as its normal standard that course of conduct in which the acts of all persons concerned are legal and conducted with common prudence. If hurt is occasioned to some individual without this standard course of affairs being disturbed, it is considered as having happened from no juridic cause, and is attributed to what is called an accident. If a hurt occurs which would not have occurred, ac-

cording to the laws of ordinary human probabilities, if some wrongful or negligent act had not disturbed the normal course, the law considers the normal and prudent activities of such persons as were concerned in the transaction as conditions, and not as causes, and regards the wrong as operating through the innocuous medium, and as, therefore, being the legal cause of the hurt.

2. When a negligent act so operates upon a normal situation of prudently conducted activities as to produce through it an injury which, according to the laws of ordinary human probability, would not otherwise have happened, and no other wrongful act is found among the near-by activities which have joined in bringing about the injury, the negligent act is to be regarded as the sole and proximate cause of the injury.

3. Where a person, under a state of fright induced by the negligent act of another person, does an act which produces injury, the question whether the conduct of the person so frightened is to be regarded merely as a medium through which the negligence causing the fright operated (so as to make the negligence the legal cause of the injury), or as itself (i. e., the conduct of the frightened person) the legal cause, is to be determined in accordance with whether the situation produced by the prior negligent act was such as would naturally tend to produce that degree of fright which the particular person experienced, and whether a normally prudent person so frightened would have been likely to do some such act as the frightened person did.

DECIDED FEBRUARY 15, 1911.

Action for damages; from city court of Savannah—Judge Freeman. February 26, 1910.

*P. W. Meldrim, Shelby Myrick,* for plaintiff in error.

*Osborne & Lawrence,* contra.

POWELL, J. The petition alleges substantially the following state of facts: The plaintiff was driving an automobile on one of the streets of Savannah, and came to a place where the railroad company's tracks cross the street on an embankment several feet higher than the usual street level, so that the approaches to the crossing are on an incline. At this point the company maintains crossing bars, controlled from a signal-tower located near the crossing. When a train approaches the crossing the bars are lowered, thus excluding travelers from the tracks. When the bars are up, this is a signal to the public that they may cross without danger from the trains. The tracks approach the crossing on a curve, and persons traveling upon the street can not tell when a train is coming, otherwise than through observing the condition of the crossing bars. The man in the tower who controlled the bars had a view of the tracks, of the crossing, and of persons approaching the crossing from either direction. The plaintiff, as he approached the crossing,

saw that the bars were up, indicating that the way was clear. As the approach was considerably up grade, he threw the levers, which control the spark and the mixture of gasoline vapor admitted into the engine, into such a position as to give the machine its maximum of eighteen horse-power. As he came upon the tracks the towerman suddenly lowered the bars on both sides of the crossing, thus penning him in upon the tracks. He threw his brakes on in full emergency and stopped the machine (the gasoline engine, as well as the automobile itself), but did not change the spark and gas levers. There were three tracks. He stopped on the first. The towerman cried out to him to move the machine, that a train was coming. He released the brakes, and, getting behind the machine, with an abnormal degree of strength caused by the excitement of the emergency, pushed the machine from the first track to the second track. The towerman cried to him again, telling him to move the machine, that the train was coming on the middle track. He gave it another shove, and just as he got it on to the third track the engine and cars dashed by on the middle track. The bars were then raised so that the plaintiff could proceed; but, according to the allegations of the petition, he was so unnerved and robbed of his ordinary senses by the fright which the situation had produced that he forgot the condition in which he had left his levers, and attempted to start the machine with the maximum power turned on. The result was that when he turned the crank, the engine "kicked back," threw him against the radiator of the machine, broke out several of his teeth, and inflicted other severe injuries upon his mouth and face. The operation of the automobile, and the mechanics, so to speak, of the situation, are set out in full. We do not know enough of the make-up and working of an automobile to give a brief description of all these things, but we hardly think it is necessary.

The defendant filed a general demurrer to the petition, insisting that under the allegations, the defendant's negligence can not be considered as the proximate cause of the plaintiff's injury; that the injury was not a natural or a reasonably to be anticipated effect of the defendant's act; that the plaintiff's injuries were the result of his own act in cranking the machine without exercising usual and ordinary precaution. The trial court overruled the demurrer, and the defendant brings error.

The state of facts presented in this case is unusual, and we have given it considerable study. The briefs of counsel for both sides are replete with citations of authorities. We have read and reread a multitude of cases on the subject of what relation must exist between a negligent act and an injury that follows, in order that the author of the one may be held liable in damages to the sufferer of the other. We have read of "proximate cause" and of "natural consequence," and of other phrases expressing the same general idea, until eyes have grown weak with reading and brain fagged out with trying to understand what learned judge after learned judge and learned law-writer after learned law-writer have said on the subject; and yet we realize that we have not pursued the subject further than to examine only a small percentage of the cases and of the text-books that we might have read. But the thought comes to us, that one may live in sight of the ocean for a lifetime, may sail upon it, may know its moods in the calm and in the storm, and yet not be able to answer some simple question as to a cup of cold water. He who so oft had studied with most critical and intelligent eyes the profusion of flowers in which England's gardens and fields abound confessed how little he knew of the "all in all" of the single and insignificant flower which he plucked from the crannied wall. Thus much we have said by way of explaining why in this opinion there is absence of citation of cases on a subject as to which cases so abound.

Cause and effect find their beginning and end in the limitless and unknowable. Therefore, courts, in their finitude, do not attempt to deal with cause and effect in any absolute degree, but only in such a limited way as is practical and as is within the scope of ordinary human understanding. Hence, arbitrary limits have been set; and such qualifying words as "proximate" and "natural" have come into use as setting the limits beyond which the courts will not look, in the attempt to trace the connection between a given cause and a given effect. A plaintiff comes into court alleging, as an effect, some injury that has been done to his person or to his property. He shows that antecedent to the injury a wrongful act of another person occurred, and that if this wrongful act had not occurred, the injury complained of would not (as human probabilities go) have occurred. We then say, in common speech, that the wrong was a cause of the injury. But to make such a standard (that if the cause

had not existed, the effect would not have occurred) the basis of legal responsibility would soon prove very unsatisfactory; for a reductio ad absurdum may be promptly established by calling to mind that if the injured person had never been born, the injury would not have happened. So the courts ask another question: Was the wrongful act the proximate cause?

All the past is a part of the cause of every present effect. The courts can deal with that great body of cause only as it relates to human activity; and a particular court dealing with a particular case must as a practical necessity isolate the activities near by to the effect in question, and from these must make the juridic determination of responsibility. Now, as activities are viewed by the courts in administering the law, they divide themselves into two classes— proper or non-negligent activities and wrongful or negligent activities. (The word "activity" is here used in a sense broad enough to include both omission and commission.) The normal course of things which the law seeks to establish, and for a violation of which the law professes to give redress, is for all men to regulate their activities properly,—that is to say, non-negligently; and whether a man has so regulated his activities is usually determined by comparing what he did under the circumstances with what an ordinary man of common prudence would have done under the same circumstances. If hurt comes to a person, and by looking back through the near-by causes which concentrated and became effectual in the hurtful thing, it appears that all those whose activities were concerned acted lawfully and as ordinarily prudent men would have acted, we say that the person so hurt has suffered an accident, and no legal responsibility can be asserted against any one. But if, in examining the causes which joined in producing the effect, we find that one or more of them consisted in somebody's having violated the standard and having done something which an ordinarily prudent man would not have done, the first step toward the declaration of legal responsibility is established. We then say that the injury was the result of negligence (or sometimes of wilful tort, which, for the sake of brevity, we are here classing under the general term "negligence").

Though negligence is discovered in relation to one of the causes which have preceded the injurious effect, it does not follow that the author of the negligence is to be held legally responsible for the

injury.  In the first place, to judge the transaction according to the natural probabilities which men's minds take as the basis for passing judgment upon the course of human affairs, it may appear that causes other than the negligent one referred to so preponderated in bringing about the result as to lead us to say, from a human point of view, that the injury was just as likely to have ensued (with only its details somewhat varied, perhaps) if the negligent thing had not occurred.  In such cases we exempt the author of the negligence from liability.

Again, it may appear that the negligent act in question was not the only one of the near causes which was negligent.  In case two or more near and preponderating negligent causes are found to have become effectuated in the same injurious result, the question as to which of the two or more negligent actors is to be held responsible is determined usually in this wise: If the two negligent acts are so related that the first would not probably have resulted in injury if the other had not occurred, and the latter amounts to such a preponderating cause that it probably would have produced the injury even if the first negligence had not occurred, or if the author of the latter negligence, with the intermediate effects of the former negligence consciously before him, is guilty of a new negligent act which preponderates in producing the injurious effect, we say that the first negligent cause is not the proximate cause, that the intervention of the latter negligence breaks the chain of causal connection so far as juridic purposes are concerned.  But if two negligent causes stand so related that neither would have produced a harmful result but for the other, and both of them consist of such acts as, according to the general course of human probabilities, produce some such injurious effect as that which did in fact ensue,—i. e., if both the negligent causes are material factors in producing the injury, and are closely connected with it, and one has not so intervened as to make it the preponderating cause, we say that the two negligent actors are guilty of concurring negligence; or if one of the two negligent actors is himself the complaining party, we speak of his conduct as contributory negligence.  Hence, the proximate cause of an injury may not, even in juridic contemplation, be sole or single.

Now if it appears that the injury resulted from a condition into which there entered both negligent and non-negligent activities, and that according to the laws of human probability the injury

would not have resulted but for the negligent activities, and that when the negligent and non-negligent activities united, the injury naturally followed, the law disregards the non-negligent activities as causes, considers them as but a part of the normal environment, and considers the negligent actor as disturbing that normality, and, therefore, as being the juridic cause of the injury. The law looks upon the ordinary current of prudently and lawfully conducted human activity as an ever moving stream of energy which may do hurt to those who come within its way, but which can never cause legal injury. Disturb it with negligence, and it flows on; and if the disturbance produced by the negligence causes it to flow in such a way as that it does a hurt which it otherwise would not have done, the negligence, and not the normal stream, is, in legal contemplation, the cause of the injury.

Now, call one other thing to mind, and we will proceed to apply the principles we are discussing to the facts of the case. In every case where a personal injury is complained of, the activities of the injured person are, of necessity, a part of the general conditions attendant upon the particular effect asserted. If his conduct at the time of the injury and precedent thereto has conformed to the normal standard of prudence, his activities are considered as merely a part of the ordinary flow of human activity. If he has been guilty of negligence, then, in determining the proximate cause of the injury, his negligence counts just as if it were anybody else's. It may itself be the proximate cause. It may so intervene between prior negligence of some other person and the injurious effect as to break the line of causal connection. It may concur with the negligence of another person.

In this case the injurious effect was the personal harm done to the plaintiff by the gasoline engine of an automobile kicking back when the plaintiff attempted to crank it. The activities of inanimate things are of course mere conditions, and not causes. The immediate cause of the kicking was the fact that the plaintiff attempted to crank the machine when the spark and gasoline regulators were turned on at full power. Here we find a human activity. Was it a juridic cause? If the plaintiff acted just as the ordinarily prudent man (whom the law takes as its standard) would have acted under similar circumstances, his conduct is to be considered as a part of the normal course of human affairs, and therefore as a

medium instead of a cause.  The defendant, through its able and earnest counsel, says that an ordinarily prudent man would not have cranked the automobile, knowing that the spark and gasoline were on the machine at their maximum.  Counsel for the plaintiff, equally able, equally earnest, assert that while an ordinarily prudent man would not usually attempt to crank an automobile with the spark and gasoline thus on, still that an ordinarily prudent man is likely to do just this very thing if placed in the situation in which the plaintiff was placed—that the plaintiff had just passed through such a terrifying experience as would rob a man of ordinary prudence of the quality of judgment which he usually possesses and which usually guides his conduct.  We recognize the principle that if a man has been robbed of his power of judgment by some act not within his control, his resulting lack of judgment becomes a part of the circumstances to be considered; it is in accordance with the rule we have stated, to compare his conduct with the conduct of an ordinarily prudent man *under similar circumstances*.  In the normal course of human activities, which we have in mind as being the non-causal medium through which negligence may effectively operate, sickness, insanity, and other personal infirmities, both mental and physical, have a place.  So, if we are testing the conduct of a particular sick man, the question is, how would the standard prudent man have acted if he had been sick just as the person in question was; the test proceeds along similar lines when the conduct of an insane, an infirm, or a frightened person is to be considered.  It is true that in the case of a frightened person· we have the preliminary question as to whether an ordinarily prudent person would have become so frightened as the particular person was under the circumstances; for we think that it is the part of prudence not to allow one's self to become unduly frightened at causes normally insufficient to produce such an effect.  The issue thus made as to what an ordinarily prudent man would have done if he had been circumstanced as the plaintiff was—frightened out of his senses, as he says he was and as the demurrer admits he was—is one that we as judges have no right to decide.  It is a matter as to which fair and intelligent minds may easily differ, and is a question of fact.  Such questions are for the jury to decide.  Since the questions as to whether a reasonably prudent man frightened as the plaintiff was would have attempted to crank his machine with the

power on at a maximum, and whether a reasonably prudent man would have experienced such fright as the plaintiff experienced from the circumstances in which he was placed, are jury questions, we must, on demurrer, give the plaintiff the advantage of this point, and consider them as conditions of the injury, rather than causes of the injury.

Thus considering the fright of the plaintiff as a condition rather than a cause of his injury, we must further inquire if the alleged negligent act of the defendant bore such relation to this fright as to be considered as having caused it from the legal point of view. (It may be stated here that it is conceded that, in an abstract sense, the act alleged against the defendant was a negligent act; and the question before this court is whether such a causal connection exists between that act and the plaintiff's injury as that the one may be held to be the juridic or proximate cause of the other.) We will test this by the standards stated above. If the negligence had not occurred, the fright would not have ensued. So, in the broad sense, the negligence was the cause of the fright. It is likewise fair to say that if it is conceded or established that a normally prudent man would have been similarly frightened under the conditions which surrounded the plaintiff as the immediate result of the defendant's negligence, it follows as a necessary logical consequence that the negligence is to be considered as the preponderating cause in producing the fright.

Nothing appears in the case made by the facts stated in the petition to require a belief that, according to the ordinary course of human probability, the fright and the consequent injury would have occurred if the negligence had not operated in a direct causal way upon the conditions surrounding the transaction. We find the plaintiff coming lawfully and prudently within the range of the defendant's activities; as he comes he is uninjured; while he is within the range of those activities the defendant violates the normal standard—acts as a reasonably prudent person would not have acted under the circumstances (for we are assuming the defendant's negligence); and before the plaintiff gets from within the range of these activities he is hurt as the result of a condition to the creation of which these activities contributed in a causal way; wherever else we look among the sum total of the general causes which joined to create the condition and to characterize it, we find no other varia-.

tion from the normal course of prudence; we except all these other causes, class them as merely a part of the condition or innocuous medium through which the defendant's negligent activities became effectual, and say that the defendant's negligence was, therefore, the sole, direct, and proximate cause of the plaintiff's injury.

To view the case in this way makes it seem simpler than when we try to decide it by any direct application of such undigested, ambiguous, and often misleading general terms as "proximate cause," "natural and probable cause," "controlling and preponderating cause," "chief preponderating cause," "remote consequence," "what a reasonably prudent man should have foreseen under the circumstances," "what follows as a natural result in the ordinary course of nature," "interposition of separate, independent agencies," and all those other phrases which swarm in the reports of negligence cases; but we think that in this more elemental view is reflected the true essence of all these law phrases.

Before the jury can find the defendant liable in this case, they must find that the act of the defendant in allowing the plaintiff to come on the tracks and in shutting him in there while the train was coming was an act of negligence. If they find that this was negligence they must further find that the situation produced by this negligence was such as to frighten a normal person, and to frighten him to such a degree as so to rob him of memory and judgment that if he had been in the plaintiff's situation, he (the normal person) would have likely forgotten the condition in which he left the spark and gasoline levers on his automobile, and would have had no better sense than to attempt to crank the machine without first examining the levers. If they find that the plaintiff experienced such a fright from the negligence of the defendant, and that the fright was natural and normal under the circumstances, and that the impulse and effect of this fright caused him to forget that his machine had been left in a dangerous condition, and caused him to omit such acts of prudence as an ordinarily prudent man would have performed before attempting to crank it, in order to move it off the track, and that while in this state of mind, thus temporarily rendered abnormal, he forgot the condition of the levers and attempted to crank the machine, unconscious of the danger, and was injured, such causal connection between the negligence and the damages is established as to authorize the jury to find the de-

fendant liable. On the other hand, if the jury should find that the defendant's acts were not negligent, or that, if negligent, they were not such as to produce such a sense-robbing degree of fright in a normal person as to cause him to forget the condition of his machine or to neglect to take usual and ordinary precaution before attempting to crank it, or that the defendant's forgetfulness of the dangerous condition of his machine, or his neglect to examine into its condition before attempting to crank it, was the result of his own carelessness more largely than of any fright which he had normally experienced, the jury should find for the defendant. Thus the question is one for the jury; and the court properly declined to solve it on demurrer.       *Judgment affirmed.*