22829. GEORGIA POWER COMPANY *v.* KINARD.

484

Colquitt, Parker, Troutman & Arkwright, Edgar B. Dunlap, Erwin, Erwin & Nix, for plaintiff in error.

Wheeler & Kenyon, contra.

Jenkins, P. J. 1. "A power company in furnishing electricity to patrons, with respect to employees of the latter rightfully on the premises of the patron and likely to come into contact with wires carrying the current supplied, is bound to use ordinary care; which demands that the power company shall use such diligence in preventing injuries to such employees as is commensurate with the danger involved in the use and control of such a subtle and deadly agency as electricity." Denson v. Ga. Ry. & El. Co., 135 Ga. 132 (68 S. E. 1113). But "where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of the premises, a company which merely furnishes electricity is not responsible for the insulation or condition of the wiring or appliances, and is not liable for injuries, caused by their defective condition, to the owner or occupant, or to third persons on the premises, except that the rule thus stated seems to be properly qualified to the extent that whenever electric current is supplied with actual knowledge on the part of the one supplying it of the defective and dangerous condition of his customer's appliances, he will be charged with liability for injuries occasioned by supplying current for use on such defective wires or appliances." Hatcher v. Georgia Power Co., 40 Ga. App. 830 (151 S. E. 696). "The weight of authority supports the view that, if the appliances of the customer are not constructed or owned by the company generating the electricity, the company is not bound to inspect the same, and it is not liable for an injury that is received by reason of defects in such appliances, where it has no knowledge of the defect, though the electricity which causes the injury comes from its plant." Scott v. Rome Ry. &c. Co., 22 Ga. App. 474 (96 S. E. 569); 20 C. J. 364, 365. In the absence of such actual knowledge, "its responsibility ends when the connection is properly made under proper conditions, and it delivers the current in a manner which will pro-

tect both life and property." 9 R. C. L. 1204 (§ 15). This, however, does not relieve the company from the duty of using proper devices and safeguards to prevent dangerous currents from passing into buildings of patrons and there causing damage; and where the proximate efficient cause of an injury is the admission, through negligence of the company, of a high and dangerous current into secondary wires of a patron, intended only for a low voltage and harmless current, the company will be held liable. *City of Thomasville* v. *Jones*, 17 *Ga. App.* 625 (2 *b*) (87 S. E. 923); 20 C. J. 344. See also, on the general question of liability for injuries on property of third persons, Ann. Cas. 1917A, 1175-1178, notes.

2. The doctrine of res ipsa loquitur has been frequently applied in electrical cases, where the circumstances of the injury were in themselves sufficient to create an inference of negligence, such as where there were shown an injury which must reasonably be attributed to the electrical force owned or controlled by the defendant power company, and facts reasonably indicating negligence by the company in the proper safeguarding or handling of such force, as the proximate cause of the injury, at or in connection with the place and properties where it occurred, which, at least as to the wiring, appliances, or devices causing the injury, were under the exclusive management or control of the defendant, unless (where otherwise managed or controlled) the facts themselves indicated that the injury was actually caused, not from negligence in connection with such wiring, appliances, or devices, but from negligence in improperly sending an excessive and dangerous amount of current through the same. The doctrine, however, has no application where electricity is furnished to a system on premises of another who himself or through another exclusively installed the wiring and appliances, and himself operates and controls them, in the absence of evidence that the injury was due to the sending of an excessive and dangerous current into the building. The rule is also without effect where the injury occurs from a defective appliance under the management or control of the plaintiff or another, or "where an unexplained accident may have been attributable to one of several causes, for some of which the defendant is not responsible." Peters *v.* Lynchburg Light &c. Co., 108 Va. 333 (61 S. E. 745, 22 L. R. A. (N. S.) 1188, notes); 20 C. J. 380-383; 9 R. C. L. 1221, § 30.

3. While it is true that in electrical as well as other injury cases questions of negligence, including what was the proximate cause of the injury, and to what and whose fault the injury should be attributed, are generally questions of fact and not of law, that "the mere fact that the injury would not and could not have resulted by the defendant's acts alone will not of itself be taken to limit and define [an] intervening agency as constituting the proximate cause," and that one of several joint tortfeasors may be sued alone; yet in order to hold the defendant liable, it must be shown "either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the (defendant as the) original wrongdoer" (*Gillespie* v. *Andrews,* 27 *Ga. App.* 509, 108 S. E. 906), although it is not necessary that the defendant should have foreseen in specific detail the manner in which a person might suffer injury. Negligence of one person may be the proximate cause of injury, although the negligence of another was a conjunctive or concurrent cause, or although the party's negligence concurred with some other cause in producing the injury. The mere negligence of a third person in failing to guard against the defect or specific act or omission of the defendant which caused the injury will not constitute an intervening efficient act which will relieve the defendant from liability. But where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of the third person or the conjunctive acts or omissions of such person and the plaintiff, the defendant can not be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury. The liability of the defendant is limited to those consequences which it should reasonably have anticipated as the natural and probable result of its own act or omission. *Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847, 848 (31 S. E. 443) ; *Georgia Power Co.* v. *Wood,* 43 *Ga. App.* 542, 545 (159 S. E. 729) ; *Rome Ry. &c. Co.* v. *Robinson,* 35 *Ga. App.* 521 (134 S. E. 132) ; *Higginbotham* v. *Rome Ry. &c. Co.,* 23 *Ga. App.* 753 (99 S. E. 638) ; 20 C. J. 367-371; Griffin *v.* Jackson Light &c. Co., 128 Mich. 653 (87 N. W. 888; 55 L. R. A. 318, notes; 92 Am. St. R. 496).

4. "Notice to the agent of any matter connected with his agency is notice to the principal." Civil Code (1910), § 3599. In order to impute to a corporation notice or knowledge acquired by one of its officers or agents, the information must have been acquired while such officer or agent with reference to the subject-matter of his agency was "acting for it in connection with its business, and within the scope of his agency." *Holland* v. *McRae Oil Co.*, 134 *Ga.* 679 (6) (68 S. E. 555). See also, as to further extensions and limitations of this rule, *Faircloth* v. *Taylor*, 147 *Ga.* 787 (4) (95 S. E. 689); *German American Life Asso.* v. *Farley*, 102 *Ga.* 720, 738 (29 S. E. 615). Where the officer or agent at the time of the alleged knowledge or notice was not acting for the corporation or in pursuance of its business and in the course of his employment and duties, it is not bound or affected. *Camp* v. *Southern Banking & Trust Co.*, 97 *Ga.* 582 (3), 585 (25 S. E. 362); *Central of Ga. Ry. Co.* v. *Americus Construction Co.*, 133 *Ga.* 392 (2), 400 (65 S. E. 855); *Harvey* v. *Jesup Banking Co.*, 27 *Ga. App.* 387 (108 S. E. 556).

5. In this case, where a judgment against the power company was obtained, for the homicide of the plaintiff's son from an electrical discharge, the evidence shows, without dispute, or demands the conclusion, that death occurred while the deceased, as an employee of an ice-cream company at its plant was working on one of its large churns, by his standing in or coming in contact with a considerable amount of brine or salt water which had leaked from the freezer on the floor, and by his placing his hand at the same time on an open or exposed electrical switch on or near the freezer; that this switch had been removed, before the homicide, by the manager of the ice-cream company from its comparatively safe position on a side wall to the exposed place of injury; that the defendant had no connection with the installation or maintenance of the wiring or electrical appliances including the exposed switch; but that these were installed through an electrical contractor employed by the ice-cream company, and were maintained by it. The evidence fails to support the allegations of the petition that any excessive and unusual, or normally dangerous, voltage was allowed by the defendant to enter at the time of injury from its primary wires on a pole outside the premises; but the evidence indicates that the defendant maintained the usual approved transformers or devices for

reducing the heavy and dangerous voltage on its primary wires before the current entered the secondary wires in the building, and that these devices were in good condition just before and immediately after as well as at the time of the accident; that the secondary wires and devices in the building were intended to take a load of 110 volts for lighting and 220 volts for power, and that from 220 to 256 volts was a proper and not excessive current for such 220 volt power; that from a test of the voltage, made immediately after the homicide, the voltage entering the building did not exceed 242 volts; and that 220 volts, while causing a shock, would not be dangerous to one touching the open switch if standing on a dry place, but would be fatal to one in a bathtub with water, or to one standing in considerable salt water, as the deceased was at the time of his death. While there was much evidence as to other charges of negligence and as to shocks of electricity received by others from defective wiring or appliances located elsewhere on the premises, these appear to be irrelevant, in failing to show any connection with the actual cause of death. There was evidence for the plaintiff, which, though controverted by the defendant, tended to show that a meter-reader and a line-foreman of the defendant in charge of the maintenance of its lines and power outside the premises had actual knowledge of the manner of wiring and the location of the electrical appliances in the building, including the open switch in question, and as to the floors being constantly damp and wet, and that the lineman had stated to the ice-cream company's manager that the current entering the building was not dangerous, which lulled that company into its carelessness with regard to the open switch. There was, however, no evidence that any of the employees of the defendant, at the time of such notice or knowledge or of the controverted statement, had any duty or business to perform as to the interior wiring, appliances, or premises of the ice-cream company, or was authorized, expressly or impliedly, to make such a statement; but it affirmatively appears that these alleged functions were excluded from their powers and duties. It also affirmatively appears from the testimony that, if the open switch had not been removed from the side wall to the dangerous position upon or near the freezer, where it remained exposed and unattached to anything, and if the deceased employee, acting under orders of the manager of the ice-cream company in helping to solder and repair

the freezer, had not come into contact with the excessive amount of brine or salt water at the same time when he grasped or touched the exposed switch, the homicide would never have happened. Accordingly, applying the foregoing holdings, the doctrine of res ipsa loquitur has no application to this case; and the proximate efficient cause of the injury must be held to have been the intervening act and agency of the ice-cream company through its manager, or such act and agency in conjunction with the act of the deceased in placing himself in contact with the salt water while grasping or touching the open switch, so as thus to cause the ordinarily normal and not excessive current to produce death. For this abnormal and extraordinary combination of circumstances, even if the defendant could be charged with the knowledge or notice of its employees as to the wiring and damp condition of the premises (although no employee was shown to have had knowledge of the large amount of salt water present at the time of the injury), the defendant can not be held liable. The defendant can not be charged, under the evidence, with the duty of anticipating that in the course of normal events a catastrophe from such intervening agencies would arise. The verdict being thus contrary to law, it was error not to sustain the general grounds of the defendant's motion for a new trial.

6. The 3d, 4th, and 5th special grounds of the motion for a new trial, relating to excerpts from the charge of the court, being controlled by the foregoing rulings, will require a readjustment of those instructions regarding the law of the case in conformity to this decision, in the event of a retrial. The exceptions relating to the admission of testimony, although the evidence complained of was irrelevant under our holdings, show in themselves no prejudicial error. Other exceptions, relating to general rules of law given in the charge, are without merit or present matters not likely to recur in another trial.

*Judgment reversed. Stephens and MacIntyre, JJ., concur. MacIntyre, J., took the place of Sutton, J., disqualified.*