### FLORES v. SULLIVAN et al.
#### No. 10115.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 27, 1937.

Rehearing Denied Jan. 19, 1938.

R. H. Mercer and H. C. Covington, both of San Antonio, for appellant.

Jones & Kirkham and Pichinson & Lyle, all of Corpus Christi, for appellee.

SMITH, Chief Justice.

In the city of Corpus Christi, Staples street, 60 feet wide, runs north and south. Furman avenue, 60 feet wide, and running east and west, empties into and ends in Staples street.

At the southwest corner of Staples, as it enters Furman, a grocery store fronts 45 feet on Staples, with a 15-foot driveway in front of it, which is for the use of customers for parking purposes. The paving of the street and driveway is continuous, obliterating the curb at the edge of the street.

Appellant, Martin Flores, operates a 1930 Ford sedan car as a "taxi." In the early morning of October 12, 1934, Flores, driving south on Staples street, turned his taxi to the right and into the paved space in front of the store, where he stopped and discharged a passenger. He then swung his taxi around, to his left, into Staples street, intending to make a "U" turn back to the north, without going into the intersection of Furman to there make the turn.

When Flores got his taxi about 10 feet over the curb line into Staples street, in the course of the turn, he brought it to a sudden stop to avoid, he testified, another car approaching from the rear, on Staples. That car, if any there was, passed on. But another car, a 1930 Chevrolet sedan, driven by one John K. Marshall, also coming south on Staples from behind Flores, struck the wheel carrying the spare tire attached to the rear end of the taxi, severing the wheel from its mooring and setting it rolling south along the Staples street curb line in front of the grocery store. The released wheel rolled rapidly and with great force along the curb, and somewhere down the line struck John L. Sullivan, a nine year old boy, as he stood further south at the edge of the curb. The wheel continued its wild course until it struck a house in its path 70 feet away. The boy's father, as next friend and in his own behalf, brought this suit against Flores, owner and operator of the taxi, and recovered damages for personal injuries in the sum of $2,000, and $296 for expenses. Flores has appealed. Marshall, whose car struck off and set the spare wheel of the taxi on its course, was not made a party to the suit.

These facts appear to be outstanding: The taxi was at a standstill when Marshall's car struck off its spare wheel; there is no contention that the spare wheel was not carefully and properly attached to the usual place on the taxi. According to Marshall's testimony, he first saw the taxi as it was being brought to a sudden stop, 20 feet ahead of him, while he was moving at 20 to 25 miles per hour; his car and brakes were in good condition, and when running at the speed he was going could have been stopped within around 20 feet. Marshall "thought" the taxi would go straight ahead, but when he saw it stopping, he undertook to run in to the right of it, between it and the curb line. In this maneuver his car "shaved off" the spare tire from the taxi, and catapulted it on its murderous way. A disinterested bystander, operator of a business alongside

the grocery store, testified that Marshall accelerated his speed as he approached the taxi. The time was 7 o'clock in the morning, and Marshall was on his way to breakfast. When his car struck the taxi, it careened to the right into another car parked on the store driveway, then cut back across Staples street and onto the curb of a 20-foot "island" running down the center of Furman avenue. In the excitement of the moment, Marshall for the first time caught sight of the injured boy lying further down the street, and concluded that he had run his own car over the boy. Flores, the taxi driver, did not see the boy at all, and knew nothing of the accident until fifteen minutes later, so he testified. Many of the details of the transaction are rendered obscure by the absence of plats, maps, and photographs which seem to have been introduced in evidence, and were to accompany the record, according to notations of the court reporter. They are not with the record, and, apparently, no order was made by the trial court that they be sent up. Much of the testimony of the witnesses was based upon references to those exhibits, and is rendered useless by the absence of the latter from the record. So far as pointed out in the briefs, or ascertained by examination of the record, the distance between the place of the collision and the place where the boy was struck is a profound secret. It seems from a plat included in appellant's brief that the boy was standing at the far corner of an alley on a projected line from Furman avenue, on the north curb of Staples street, a distance of about 40 feet. This plat not being authenticated, however, cannot be considered as a part of the record.

The jury found appellant guilty of negligence in nine different acts in the premises, each of which, the jury found, was a proximate cause of the boy's injuries. They found (1) that appellant negligently turned his taxi into the path of Marshall's car; (2) that appellant negligently failed to give Marshall "visible or audible signal of his intention to turn said taxi around"; (3) that he failed to proceed to the center of the intersection of Furman avenue and Staples street before attempting to turn around; and (4) that he failed to keep a proper lookout, or (5) to keep his taxi under control, and (6) operated it in a negligent and reckless manner, and (7) at a negligent rate of speed; that he (8)

failed to sound his horn, and (9) to permit Marshall to pass before he put his taxi in motion, and (10) that the accident was not unavoidable.

On the other hand, the jury exonerated Marshall, who was not a party to the suit, from actionable negligence. They found that he did not fail to keep a proper lookout, or have his car under control; that he was not moving in excess of 20 miles per hour, did fail to apply his brakes, but that such failure was not negligence; that he failed to stop his car, and did not "speed up just prior to the accident," but that these omissions were not negligence; that he failed to "turn or cut his car to the left and pass in front of the taxi," or to slow down, but such failures did not constitute negligence; that he "attempted to go behind or cut behind" the taxi, and that such act was not negligence.

We are at once confronted with the proposition of appellant that under the plain and obvious circumstances of the case the injury to the boy was not one that could reasonably have been foreseen by appellant as a result of his negligent acts, and that therefore such negligence cannot be held to have been the proximate cause of such injury, within the contemplation of the law.

■ So far as we know, the books do not present a parallel case to this, on the facts, and we can look only to general principles for such guidance as they afford. The general rule is that the question of proximate cause, including the incidental question of foreseeability, is one for the jury to be determined from all the facts and circumstances of given cases, and that general rule is apparently being steadily extended to almost every set of circumstances a case may present.

■ Usually, at least, the agency actually inflicting the injury must bear some relation to a particular negligent act. To take this case for an example, had it appeared that the rampant wheel which struck appellee had been negligently attached to the taxicab, and had been set at liberty by reason of that negligence, the question presented might have been less difficult. But, for the purposes of this decision, the wheel was carefully and securely attached at a proper place and could not have been dislodged and set rolling with such deadly force, in an ordinary collision between two automobiles, but only

by a terrific force, aimed at and concentrated solely upon the very result accomplished in this case.

 The authorities variously hold that in order to render one liable under the issue of proximate cause, it must appear that the injury was such as, in the light of all the attending circumstances, ought reasonably to have been anticipated as a natural, normal consequence of the negligent act; that the actor ought to have reasonably foreseen some like injury produced by similar intervening cause; to have foreseen the injury, or some injury, as the natural and probable result of his acts. The injury must have resulted from direct, intervening, or concurring causes such as might reasonably have been contemplated under all the attending circumstances, some injury to the victim, or to some one similarly situated; some accident of the kind occurring; that some similar injury might result—such injury as the natural, though not necessary and inevitable, result as was likely, in ordinary circumstances, to ensue. These matters shall be tested by common experience, applied to the surrounding circumstances.

The act of Marshall, the stranger, in propelling his car with such speed and in maneuvering it with such unwitting accuracy as to shave off the securely attached spare wheel, without other impact upon the taxicab, was undoubtedly an intervening agency operating between appellant's negligence and the injury inflicted, and this agency was the direct cause of the damage. Can it rationally be said that appellant, in committing the acts of negligence found against him, could reasonably have foreseen that, as a result of such acts, his spare wheel, securely attached to the proper place on the rear end of his taxicab, would be shorn from its mooring and set off on such a deadly mission? Or that any similar mishap, or any mishap likely to result from a rear-end collision, would injure a person standing somewhere down the line of a curb 10 feet away?

 We have concluded, under all the circumstances of the case, not forgetting, but keeping in mind as pertinent and material the fact that the spare wheel was properly and carefully attached to appellant's vehicle, that, as a matter of law, the injury here complained of was not such as could reasonably have been foreseen or anticipated by appellant as a natural consequence of either of the acts of negligence charged against him, when tested, as it should be, by the common experience of man. This conclusion requires that the judgment be reversed.

We have not undertaken to cite any authorities in support of this conclusion. There are literally hundreds of cases upon the subject, generally, but as they are each decided upon the facts peculiar to it, and none of them is based upon a state of facts such as exist here, we have cited none of them, notwithstanding they abound in numbers. With apologies, but with much sympathy and appreciation, we are constrained to quote, and adopt, as apropo, the following whimsical commentary from Judge Powell of the Court of Appeals of Georgia in Atlantic Railway Co. v. Daniels, 8 Ga.App. 775, 70 S.E. 203, 204:

"The state of facts presented in this case is unusual, and we have given it considerable study. The briefs of counsel for both sides are replete with citations of authorities. We have read and reread a multitude of cases on the subject of what relation must exist between a negligent act and an injury that follows, in order that the author of the one may be held liable in damages to the sufferer of the other. We have read of 'proximate cause' and of 'natural consequence,' and of other phrases expressing the same general idea, until eyes have grown weak with reading and brain fagged out with trying to understand what learned judge after learned judge, and learned law-writer after learned law-writer have said on the subject; and yet we realize that we have not pursued the subject further than to examine only a small percentage of the cases and of the text-books that we might have read. But the thought comes to us that one may live in sight of the ocean for a lifetime, may sail upon it, may know its moods in the calm and in the storm, and yet not be able to answer some simple question as to a cup of cold water. He who so oft had studied with the most critical and intelligent eyes the profusion of flowers in which England's gardens and fields abound confessed how little he knew of the 'all in all' of the single and insignificant flower which he plucked from the crannied wall. Thus much we have said by way of explaining why in this opinion there is absence of citation of cases on a subject as to which cases so abound."

Numerous other questions are presented by the appellant, but become immaterial in view of the above holding.

The judgment will be reversed, and, as the case seems fully developed, we will now render the judgment that in our opinion should have been rendered below, that appellee take nothing by his suit, and pay all costs of the litigation.

Reversed and rendered.