46159, 46160.   GEORGIA POWER COMPANY v.
OWENS; and vice versa.

ARGUED MAY 5, 1971—DECIDED SEPTEMBER 29, 1971—
REHEARING DENIED OCTOBER 22, 1971—

*Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for appellant.

*Shi & Raley, Trammell F. Shi, F. Robert Raley,* for appellee.

JORDAN, Presiding Judge. The plaintiff, who was born on March 25, 1956, sustained severe electrical burns at approximately 8:45 a.m., EDST, Sunday, May 7, 1967, in the yard in the rear of the premises where he resided with his mother and stepfather at 1976 Kitchens Road in the City of Macon, immediately adjacent to the right of way of the defendant. He was burned on his neck, feet, and other parts of his body, is now blind in his left eye, and the vision in his right eye is impaired. His younger brother, who was standing nearby, was also injured.

The electrical transmission system on the defendant's right of way adjacent to the premises consists of three 115 KV conductors, each of which is suspended and insulated by seven insulators from a wooden cross-arm held in the air by two wooden poles. Across the top of each pole is a static line which is grounded and connected to a strip of metal buried two feet in the ground on the right of way and extending some 200 feet along the right of way. Also connected to the ground system is a short length of wire extending vertically above each pole. This ground system serves as a counterpoise for the purpose of shielding the conductors from lightning, and will, theoretically at least, dissipate the force of lightning in the ground, thereby rendering it harmless.

In our opinion from a careful study of the evidence the injuries to the plaintiff and his brother can only be explained as having been caused by an electrical current of momentary duration, such as would be produced by a bolt of lightning. The plaintiff and his brother were suddenly struck down at a distance of some 50 feet from the transmission lines at a time when witnesses heard a sound variously described as a "loud explosion," a "shot off like a dynamite," and a "boom." Although the stepfather did testify regarding a tingling sensation while working on the ground preceding the incident, even if it were an electrical current it produced no injuries. Immediately after the incident the mother walked to the plaintiff without injury, and later others walked in the area without injury. The defendant's conductors were energized with 115 KV from two points, and at the same time that the plaintiff and his brother were struck down the lines were de-energized by the opening of two oil circuit breakers, one of which automatically

closed immediately, whereas the other remained open until closed manually. The record as to the first shows that it opened and closed at 8:46 a.m. EDST, whereas the other opened at 8:44 a.m. EDST and remained open until 8:53 a.m. EDST. A visual inspection by employees of the defendant later in the day revealed damage to the conductor nearest the plaintiff indicating a burning of the type caused by lightning, and in the opinion of an expert it was damage of the type caused by lightning,' which can and does occur despite the shielding effect of the grounded overhead static lines. The possibility of a conductor being grounded is completely discounted by the physical evidence to the contrary, as noted by the defendant's employees when they arrive at the scene plus the uncontroverted fact that following the opening and closing of the circuit breakers the transmission continued uninterrupted until deliberately cut off to allow employees to remove the damaged section of one of the conductors and replace it with some 60 feet of new line. No lines were ever down until deliberately cut by the defendant's employees to replace the damaged section.

It appears without dispute from the evidence that what would generally be regarded as a single bolt of lightning will strike more than one point in the same area. Thus lightning could have struck the conductors, or one of them, the grounding system, and the plaintiff and his brother simultaneously. The sole expert for the plaintiff, although he testified concerning several theories as to the cause of the plaintiff's injuries, was of the opinion that if lightning did injure the plaintiff and his brother, "I would say it would have had to have struck them directly. I don't see any other way that lightning could have gotten to them." He also testified that if it struck the transmission line, "I would have expected the grounding system to have safely dissipated it into the earth. If it did reach someone after having struck the line I would say that something is wrong with the grounding system at that time." But there is no evidence outside the realm of speculation that anything was wrong with the grounding system. Moreover, no basis appears from the evidence to disclose any act or omission on the part of the defendant in constructing or maintaining its transmission system which could be regarded as negligence having a causal connection with the injuries sustained by the plaintiff, even

if the lightning did reach the plaintiff through the grounding system of the defendant. In fact it appears that the system was designed, constructed, and maintained in accordance with the prevailing standards of the industry.

The circumstances here shown clearly reveal that the occurrence was not an unexplained event caused by something owned, operated, maintained, or controlled by the defendant, which, absent proof of external cause, would not happen without negligence, whereby the principle of res ipsa loquitur would apply. See *Parker v. Dailey*, 226 Ga. 643, 645 (177 SE2d 44).

The evidence disclosing an Act of God as the cause of the plaintiff's injuries, and no basis appearing whereby the injuries can be explained as caused in some way by the negligence of the defendant, it follows that the trial judge erred in refusing to direct a verdict for the defendant and in overruling the defendant's motion for judgment n.o.v., and it is unnecessary to consider the remaining issues as made by the appeal and cross-appeal.

*Judgment reversed on main appeal; cross appeal dismissed. Bell, C. J., Hall, P. J., Eberhardt, Deen, Quillian, and Whitman, JJ., concur. Pannell and Evans, JJ., dissent.*

EVANS, Judge dissenting. Charlie Owens, aged 14, was injured by an electrical current while standing in the backyard of his home, in the City of Macon, immediately adjacent to the right of way and power lines of Georgia Power Company. He suffered severe injuries, including the complete loss of vision of his left eye, and impairment of vision of his right eye. He was burned on his neck, feet, and other parts of his body. He filed suit against Georgia Power Company, alleging negligence substantially as follows: 1. Insufficient right of way for safe erection of power lines that were to be charged with the volume of current that was carried, and thereafter transmitting such volume of current over said lines. 2. Erection of power lines in close proximity to residences. 3. Improper selection of type of lines to be used, and maintaining same at insufficient height above the ground. 4. Failure to properly insulate and provide safety devices; and failure to properly inspect and maintain such insulation and safety devices as were provided. 5. Improper inspection as to line fatigue and loosening of clamps attached thereto; and failing to insure that said lines

would not break or sag or otherwise allow current to come into contact with the ground or with other lines.

By amendment, plaintiff added the following grounds of negligence, to wit: 6. Failing to properly install a ground system adequate to protect persons against injury, which injury could be reasonably anticipated by defendant as a result of the presence of said lines. 7. Erection and maintenance of transmission and ground system in connection therewith unreasonably close to residential property, and closer than was reasonably safe.

Defendant denied negligence and asserted that plaintiff was struck by lightning, which was an Act of God.

Plaintiff's contentions during the trial were that he was injured by defendant's having improperly and negligently allowed a great volume of electric current to be discharged into the ground at or near him while in his own backyard; that whether it was electric current owned by Georgia Power Company, or lightning attracted to its high power lines, the liability was the same; and that lightning striking defendant's high power lines was an ordinary everyday occurrence, well known to the agents of defendant, with a corresponding duty to safely conduct such current as was generated by lightning to the ground without injuring persons who were authorized to be and were legally within the proximity of said power lines. Plaintiff contended that lightning striking defendant's high power wires was such an everyday occurrence as precluded its being within the legal definition of an Act of God.

The evidence does not show that lightning struck immediately before plaintiff was injured. A loud booming sound was heard, which may or may not have been thunder. No one saw a flash of lightning. The jury could have concluded there was no lightning, or that there was lightning.

The case was tried by a jury and a verdict was rendered for plaintiff for $50,000. The trial court overruled defendant's motion for directed verdict, and its motion for judgment notwithstanding the verdict, and overruled its motion for new trial on the general and special grounds.

The majority opinion has reversed the judgment of the trial court, and has rubbed out the verdict for $50,000, holding that the motion for directed verdict and for judgment notwithstanding the

verdict should have been granted, thus ending the case without privilege of another trial.

I dissent. There was ample evidence in the record to support the allegations of negligence against defendant, and the issues as to negligence were properly solved and decided by a jury in Bibb County, rather than by the judge of that court, or by the judges of this court. If either party had the advantage in the weight of evidence such advantage was with the plaintiff rather than the defendant, although of course the credibility of the witnesses and the weight of evidence is a matter for the sole determination of the jury.

The directing of a verdict, or granting a motion for judgment notwithstanding the verdict, is a very, very grave matter. By such act, the case is taken away from the jury, and the court substitutes its own judgment for the combined judgment of the twelve men good and true, and ends the case without another trial. Such act declares that there is no conflict in the evidence, and that all deductions and inferences from the evidence introduced demand a particular verdict. *Code Ann.* § 81A-150 (Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248).

In *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408), this court held that *the court's function in ruling on* motions for directed verdict and motions for summary judgment is analagous, citing 6 Moore's Federal Practice 2101, § 56.15; 2020, § 56.02 [10], and then held: "'The essence of both motions is that there is no genuine issue of material fact to be resolved by the trier of facts, and that the movant is entitled to judgment on the law applicable to the established facts.' 6 Moore's Federal Practice, 2032, § 56:04 [2]. *The burden of demonstrating this lack of a substantial issue is upon the moving party in a motion for directed verdict (Code* § 110-104) *or a motion for summary judgment. Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442). *The party opposing the motion must be given the benefit of all reasonable doubts on motion for directed verdict (Sellers v. Wolverine Soap Co.,* 19 Ga. App. 295 (1) (91 SE 489)) . . . *The evidence must be construed most favorably to the party opposing the motion for directed verdict (Curry v. Durden,* 103 Ga. App. 371 (1) (118 SE2d 871)) . . . *The party opposing the motion must be given the benefit*

*of all favorable inferences on the motion for directed verdict.* (*Northwestern University v. Crisp,* 211 Ga. 636, 647 (88 SE2d 26)) . . . In other words, *where more than one inference can be drawn from the evidence, the duty of solving the mystery should be placed upon the jury and not the trial judge. Northwestern University v. Crisp,* supra; *Marshall v. Woodbury Banking Co.,* 8 Ga. App. 221 (68 SE 957). *This is true with respect to circumstantial evidence as well as direct evidence. Whitaker v. Paden,* 78 Ga. App. 145, 148 (50 SE2d 774)." (Emphasis supplied).

Applying the law as enunciated in the foregoing decision, I do not see how a verdict could be legally directed for the defendant in this case. I repeat that I construe the evidence to be more weighted on the side of the plaintiff than defendant, but even where a contrary view is held, can it be said that a verdict should have been *directed* for the defendant in this case? The burden was on the defendant to demonstrate the lack of a substantial issue. The plaintiff was entitled to (and it was required that he be given) the benefit of all reasonable doubts; the evidence had to be construed most favorably to the plaintiff; all inferences arising from the evidence had to be placed in the scales on the side of the plaintiff. If two inferences could be drawn from certain phases of the evidence, the inference which favored plaintiff had to be drawn, and the other rejected; and this rule applied to circumstantial as well as direct evidence.

Since time immemorial, the solution of *negligence* has been set apart as a matter almost solely for determination by a jury. In *Kinney v. Turnipseed,* 45 Ga. App. 269 (1) (164 SE 225), it is held: "Questions as to *diligence and negligence,* including contributory negligence and what negligence constitutes the proximate cause of the injury complained of, *are questions peculiarly for the jury,* such as this court will decline to solve on demurrer, except where they appear to be clear, plain and indisputable. *Southern Railway Co. v. Slaton,* 41 Ga. App. 759 (3) (154 SE 718); *Meriwether County v. Gilbert,* 42 Ga. App. 500, 501 (2) (156 SE 472)." (Emphasis supplied).

In *Gatewood v. Vaughn,* 86 Ga. App. 823 (72 SE2d 728), there appears to have been very little evidence supporting the verdict, but this court held (p. 827): "Such questions of *negligence* and

*proximate cause* are for the jury, ordinarily, and their verdict must stand where, as here, it is supported by *some* of the evidence. The trial judge properly refused to grant a new trial." (Emphasis supplied).

Again, in *Lorig v. Brunson,* 84 Ga. App. 558, 563 (66 SE2d 268), this court held: "Questions of *what amounts to negligence and what is the proximate cause of an injury, address themselves to the determination of the jury, and this court will decline to solve them except in plain and indisputable cases. Atlantic Coast Line R. Co. v. Daniels,* 8 Ga. App. 775 (70 SE 203); *Rome Ry. & Light Co. v. King,* 30 Ga. App. 231 (117 SE 464)." (Emphasis supplied).

So strongly does the law inveigh against directed verdicts, the usual rule on appeal is reversed where a directed verdict is *granted* in the lower court, and appeal is taken from that judgment. Of course the usual rule *on appeal* is to presume the judgment of the trial court to be correct and supported by sufficient evidence. But as to an appeal from a directed verdict, the appellate courts have adopted the rule that the evidence is viewed in the light *most favorable to the losing party,* and it must be shown, when thus viewed, that there was indeed no conflict, before such verdict will be affirmed. See *Aldridge v. Dixie Fire & Cas. Co.,* 223 Ga. 130 (1) (153 SE2d 723); *Hitchcock v. Rochelle,* 104 Ga. App. 775 (123 SE2d 268); *Williams v. Slusser,* 104 Ga. App. 412 (121 SE2d 796).

And, of course, in the case sub judice, the lower court's judgment was *against* directing a verdict, and that gives added strength to the protection that is afforded the plaintiff in this case, as this court scrutinizes the evidence, the inferences and deductions therefrom, all of which must be construed most favorably toward the plaintiff.

As to the majority opinion's statement that the lightning was an "Act of God"—which the defendant urged—this position is completely untenable. Lightning strikes the wires of Georgia Power Company every day in the year, and counsel for defendant so stated during argument in this court, in answer to a question from the court, giving it as his opinion that this was true. Everyday occurrences are not included within the legal meaning of an "Act of God." Of course, everything that happens is in a sense an

Act of God in that He rules the universe; controls the seasons and the weather, and is omnipotent.

In *Vickers v. Ga. Power Co.,* 79 Ga. App. 456, 459 (54 SE2d 152), where lightning had struck the lines of defendant this court states: "'Science and common experience show that wires suspended in the atmosphere *attract electricity in time of storms.'* We think . . . the defendant was bound to employ such approved apparatus in general use as would reasonably be necessary to prevent injury to the plaintiff's house or property arising from *lightning or electricity which might be generated or unleashed by a thunderstorm and strike the wires and be conducted thereby into the house* . . . *City of Thomasville v. Jones,* 17 Ga. App. 625 (187 SE 923), and *Georgia Power Co. v. Kinard,* 47 Ga. App. 483 (170 SE 688)." (Emphasis supplied).

In *Central Ga. Elec. Membership Corp. v. Heath,* 60 Ga. App. 649, 652 (4 SE2d 700), this court held that defendant was required to so operate and maintain its lines as to protect the public from injury by lightning striking its wires, and stated: "'Act of God means an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. *This expression excludes all idea of human agency.'* . . . *An Act of God means a casualty which is not only not due to human agency, but is one which is in no wise contributed to by human agency, and . . . an act which may be prevented by the exercise of ordinary care is not an Act of God.* When the lightning struck the main line of defendant it was an act of God; *but permitting it to travel across the lateral wire into the room occupied by the plaintiff, instead of arranging it so that it would be conducted into the ground, was not an act free from human agency. . ."* (Emphasis supplied).

In the case sub judice, assuming there was lightning, God sent the lightning, but the Georgia Power Company furnished and maintained the wires that attracted the lightning to strike the wires at this particular place, and then conducted the electrical current generated thereby into the ground so that the plaintiff suffered severe and permanent injury; and an Act of God is not available as a defense in this case.

In this day and time, when trial by jury is under attack from

many sources; when there stand within the wings those who are so ready to come forward and take over the functions of *both court and jury*, and administer the law by boards and bureaus and administrators, I wish to raise my voice in defense of the system of trial by jury. I do not believe the rights of a free people can be preserved if we allow our basic freedoms to be chipped and whittled away, little by little. Criticism is heard of trials that extend over periods of several months, but the criticism must be lodged against the judge and not against the jury. And thus far in our state we have not been subject to criticism for too-lengthy trials. But our courts are made the whipping boy of every critic who has nothing better to offer. They have taken from the courts the right to determine the rights of working people who are injured in the course of employment, and now they are anxious to take away the right to determine the rights of those who are injured in traffic incidents. Back of it all is the scheme and plan one day to do away with all trials by jury.

If the majority opinion prevails in this case, then we are not saying that we ought not to have jury trials but we are saying that Charlie Owens *will not* have a trial by jury. I am concerned about the tendency of courts to usurp the functions of juries. Recently this court, in a divided opinion, in a case that was also from Bibb County, rubbed out a verdict for $20,000, where a mentally disturbed patient had been allowed to injure himself while in custody of a hospital, which took practically no precautions to protect him. That was the case of *Macon-Bibb County Hospital v. Appleton,* 123 Ga. App. 445 (181 SE2d 522). This court did not grant a new trial but completely obliterated and wiped out the verdict, and in effect told this injured man to go home and live with his injuries as best he could. I dissented from that decision, as I dissent from the majority opinion in this case. I am not willing to rub out this plaintiff's verdict, and tell him that he will not have another trial, but that his case is ended, and he must live with his blind left eye and impaired vision in the right eye, and his burned body, as best he can; and that the jury that tried his case meant well, but that they labored in vain.

In my opinion the trial court properly overruled the motion for directed verdict, properly overruled the motion for judgment not-

withstanding the verdict, and properly overruled the motion for new trial on general grounds.

The other enumerations of error are as follows: 1. Overruling motion for new trial, as amended, in its entirety—No. 2; 2. Error in refusing to eliminate certain specifications of negligence and in charging or refusing to charge thereon—Numbers 3, 4, 5, 6 and 7; 3. Error in failing to charge certain written requests—Numbers 8, 9 and 10; 4. Error in charge to the jury when there was no evidence to support same—Numbers 12, 13, 14, 15 and 16; 5. Error in allowing counsel to read law in presence of jury—No. 11; 6. Illegal admission of testimony by an expert—No. 17; 7. Error in ruling on effect of pleadings, as allowing certain evidence thereunder, and in allowing amendment during trial—No. 18; 8. Exclusion of certain evidence as a part of the res gestae—No. 19.

I have considered each of these enumerations and find no error therein. Therefore, I would affirm the trial court and allow the verdict to stand.