59437. SUGRUE et al. v. FLINT ELECTRIC MEMBERSHIP CORPORATION et al.

Smith, Judge.

This is the second appearance of this matter in this court. See *F. P. Plaza, Inc. v. Sugrue,* 144 Ga. App. 543 (241 SE2d 644) (1978). Appellants, plaintiffs below, sued Flint Electric Membership Corporation (hereinafter Flint) and F. P. Plaza, Inc. (hereinafter Plaza) for damages incurred as the result of an electrical fire. Appellants operate a retail clothing store leasing space in Houston Mall. The fire occurred in the mall's transformer room across the hall from appellants' storeroom and produced considerable amounts of

oily, black smoke and soot which damaged appellants' entire inventory. At the close of appellants' evidence, the trial court directed verdicts for both Flint and Plaza on the grounds that appellants had failed to show actionable negligence on the part of either. We affirm in part and reverse in part.

The evidence adduced at trial showed that the fire occurred in the transformer room which, in addition to the transformer, contained conduits bringing electricity into the transformer from the power company (primary) as well as conduits taking electricity from the transformer to points throughout the mall (secondary); that the primary conduits and the transformer itself were installed, owned and maintained by Flint; that the secondary conduits were installed for the mall by an independent construction company and owned by Plaza at the time of the fire; that Flint alone had a key to the transformer room; and that the burning of the insulation in two secondary conduits caused the smoke and soot. There was no evidence that Flint had negligently "hooked" the transformer to the conduits or "that the injury was due to the sending of an excessive and dangerous current into the building." *Ga. Power Co. v. Kinard,* 47 Ga. App. 483, 485 (2) (170 SE 688) (1933). However, there was evidence of overheating and burning in the transformer. Mr. Bobby Trussell, Manager of Engineering and Operations for appellee Flint, testified that, in his opinion, "the cause of the incident was . . . on the secondary side of the transformer in the conduit."

1. "It is the general rule . . . that where wiring, or other electrical or gas appliances on private property, is owned or controlled by the owner or occupant of the premises, a company which merely furnishes electricity or gas for such respective appliances is not responsible for the insulation of the electrical appliances or the condition of the wiring or electrical or gas appliances, and is not liable to the owner or occupant or to third persons on the premises for injuries caused by such defective condition. The rule is subject to the exception that whenever such electrical current or gas is supplied with actual knowledge on the part of the one supplying it of the defective and dangerous condition of the customer's appliances, he is liable for injuries caused by the electricity or the gas thus supplied for use on such defective and dangerous appliances, but no duty of inspection rests on the one supplying the electricity or the gas from the mere fact of rendering such service to the customer owning or controlling the equipment. Where the one supplying the electricity or the gas has no control over the appliances and has no actual knowledge of the defective and dangerous condition thereof, his responsibility ends when connection is properly made under proper conditions and the current of electricity or the gas is delivered in a

manner which will protect both life and property." *Milligan v. Ga. Power Co.,* 68 Ga. App. 269 (22 SE2d 662) (1942); *Ga. Power Co. v. Kinard,* supra.

Appellants contend that since Flint controlled and supervised the connections to and from the transformer and since a fire in the transformer or connections produced the smoke and soot which damaged their inventory, the issue of Flint's negligence was a jury question. Appellee responds that the general rule set out in *Milligan* and *Kinard,* supra, "fits the case at bar like a glove . . ." and requires judgment in its favor.

We agree with appellants. Inasmuch as Flint maintained exclusive access to the transformer room and periodically entered that room for the purpose of inspecting the transformer, we cannot say as a matter of law that this exercise did not amount to such "control" over the secondary conduits located therein as would impose some duty on Flint as to their condition. Cf. *City of Griffin v. McKneely,* 101 Ga. App. 811 (3) (115 SE2d 463) (1960); *Hatcher v. Ga. Power Co.,* 40 Ga. App. 830 (2) (151 SE 696) (1929). Certainly it cannot be said as a matter of law that the owner of the premises exercised such control over the area in question so as to bring the instant case within the rule of *Milligan* and *Kinard,* supra.

In addition, appellants also assert that Flint delayed in cutting off the power to the transformer after notification of the fire. Appellant, Mr. Sugrue, testified that he arrived at the scene before Flint and that the transformer was "sparking and smoke was billowing from the transformer room and smoke was billowing from the top of the ceiling, the roof." He further testified that Flint arrived shortly thereafter but that the sparking continued approximately 35 minutes. The assistant fire chief was asked what he had observed when he surveyed the transformer room: "A. When I arrived most of the fire was out. It was just a little bit of fire but there was a lot of wire in that little room on the floor . . . Q. Were you able to go in the room itself or any of your men at that time? A. No, I wouldn't let them go in there. I didn't know too much about the energy in the transformer and I couldn't endanger my men so then I got in touch with my radio men and I requested they get the power company there and they arrived in maybe eight or nine or ten minutes, they came there and they done their work." Twenty minutes elapsed before the fire department entered the transformer room. Construing the evidence most strongly against Flint, we find a jury question presented as to whether appellants' damages were aggravated by Flint's alleged delay in cutting off the power. See generally, *Lincoln Property v. Stasco Plumbing,* 130 Ga. App. 767 (204 SE2d 449) (1974); *Central Ga. Elec. v. Drake,* 128 Ga. App. 560 (197 SE2d 389) (1973).

" 'Questions of negligence and diligence and of cause and proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases, solely for the jury, and the courts will decline to decide such questions . . . unless reasonable minds cannot differ as to the conclusions to be reached.' *Hardy v. Brooks,* 103 Ga. App. 124 (1) (118 SE2d 492) (1961); *Long Const. Co. v. Ryals,* 102 Ga. App. 66 (1) (115 SE2d 726) (1960)." *Stern v. Wyatt,* 140 Ga. App. 704, 704-705 (231 SE2d 519) (1976). "[E]vidence strongly supporting, but not demanding, a particular finding does not warrant a directed verdict. *Jenkins v. Gulf States Mtg. Co.,* 138 Ga. App. 835 (227 SE2d 522) and cits." *E-Z Go Car Div. of Textron, Inc. v. Kuhlke Const. Co.,* 141 Ga. App. 711 (234 SE2d 339) (1977).

2. Appellants cite Plaza's failure to seal the walls of the transformer room as negligence which proximately caused the damage to their inventory under Code § 105-401. Appellants contend that failure to seal the walls of the transformer room all the way to the ceiling was a defect in construction which Plaza should have discovered upon inspection of the premises; that Plaza knew the transformer room was located near storerooms; and that it knew the transformer was a dangerous piece of equipment since only Flint had access to the room after construction. Appellants further contend that it is common knowledge that electricity can cause fire and that fire causes smoke.

There is no dispute that smoke and soot from the transformer room fire escaped into appellants' storeroom and caused the damage complained of. However, the trial court found that while the owner of the premises "may be under constructive notice as to any and all defects that may have occurred during the construction, there is no evidence that any duty had been breached . . . [inasmuch as] there is no defect within the meaning of [that term] . . . [T]he owner . . . of premises is not under a duty as a reasonably prudent man to make [the walls] airtight . . . so that gaseous matters cannot disseminate from one room to the other." Since the record and transcript demand this finding, there was no error in directing a verdict in favor of Plaza. See *Crooke v. Lumpkin,* 89 Ga. App. 277 (1) (79 SE2d 321) (1953).

*Judgment affirmed in part and reversed in part. Banke, J., concurs. McMurray, P. J., concurs in the judgment only.*

SUBMITTED FEBRUARY 5, 1980 — DECIDED JULY 16, 1980 — REHEARINGS DENIED JULY 31, 1980.

*John P. Nixon,* for appellants.

*Edward L. Savell, Glenn Frick,* for appellees.